IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 23, 2014 at Knoxville

# STATE OF TENNESSEE v. RICKY ALLEN HICKMAN

**Appeal from the Circuit Court for Marshall County**
**No. 2013-CR-55     Lee Russell, Judge**

_____

**No. M2013-02390-CCA-R3-CD - Filed September 16, 2014**

_____

A Marshall County jury convicted the Defendant, Ricky Allen Hickman, of one count of rape of a child and three counts of aggravated sexual battery.  The trial court sentenced the Defendant to serve thirty-five years for the rape of a child conviction and twelve years for each of the aggravated sexual battery convictions.  The trial court ordered partial consecutive sentencing, for a total effective sentence of forty-seven years in the Tennessee Department of Correction.  On appeal, the Defendant contends that: (1) the evidence is insufficient to sustain his conviction for rape of a child; and (2) his sentence is excessive and contrary to law.  After a thorough review of the record and applicable authorities, we affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., J., and JOE H. WALKER, III, Sp.J., joined.

James Ronald Tucker, Jr., Shelbyville, Tennessee (on appeal) and William M. Haywood, Lewisburg, Tennessee (at trial) for the Appellant, Ricky Allen Hickman.

Robert E. Cooper, Jr., Attorney General and Reporter; Michelle L. Consiglio-Young, Assistant Attorney General; Robert Carter, District Attorney General; and Weakley E. Barnard, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION
### I. Facts

This case arises from allegations of sexual abuse made against the Defendant by the victim, the Defendant's granddaughter.  A Marshall County grand jury indicted the

Defendant for three counts of rape of a child and three counts of aggravated sexual battery.

## A. Trial

At the Defendant's trial, the following evidence was presented: Joey Kinder testified that he was married to Kimberly Kinder and that she had three children from a previous relationship. He stated that, in addition to his two children, Ms. Kinder's three children lived with the couple and that he was close with his step-children, who looked at him "as dad." He stated that, before August 2010, he had met Ms. Kinder's father, the Defendant, two or three times, and he recalled that the Defendant "gave Ms. [Kinder] away" at their wedding on June 5, 2010. Mr. Kinder identified the Defendant in the courtroom.

Mr. Kinder stated that the Defendant visited the Kinder's home during the period of April through August 2010. He stated that the victim, K.C., was present in the home during that time period. Mr. Kinder testified that, when the Defendant came to visit the residence at the end of April 2010, K.C. "was like [my] shadow. Everywhere I went she was right there. I call it clingy. She was very clingy. I could not get away from her any way." Mr. Kinder stated that this was "unusual" behavior for K.C.

Mr. Kinder testified that on August 13, 2010, he had a discussion with the victim. He stated that the victim climbed into his lap and began telling him about a class she had been in at school with a guidance counselor. The victim proceeded to tell him "something that [he] thought was important," "totally unsolicited," which prompted Mr. Kinder to speak with his wife about his conversation with the victim. After telling Ms. Kinder what the victim had said and speaking together with the victim, the couple contacted the Marshall County Sheriff's Department.

On cross-examination, Mr. Kinder recalled that, during the Defendant's visits to the family's home, Mr. Kinder had seen the other children sit on the Defendant's lap, but he had never seen the victim do the same. Mr. Kinder stated that the Defendant volunteered to keep the couple's children while they went on their honeymoon during the summer of 2010.

Kimberly Kinder, the Defendant's daughter, testified that her daughter, the victim, was born January 19, 2003, and was one of five children in the Kinder family. Ms. Kinder recalled a conversation she had with the victim on August 13, 2010. The victim told Ms. Kinder that she had been in a class at school "about not keeping secrets[.]" Ms. Kinder learned that the victim had told Mr. Kinder her "secret" and stated that the victim also told her "what her secret was[.]" Ms. Kinder stated that, after discussing the victim's "secret" with her husband, they contacted the Marshall County Sheriff's Department. Ms. Kinder testified that an investigation by the sheriff's department ensued.

Ms. Kinder testified that at some point during the time period of September 1, 2009, through October 31, 2009, there was a party at the Kinder's house and that the Defendant was in attendance. The Defendant was asked to go out and buy ice, and the victim asked to accompany him on the errand. Ms. Kinder recalled that the Defendant took the victim in his van to buy the ice. Ms. Kinder learned later during the sheriff's department's 2010 investigation that an "incident" occurred while the Defendant and the victim were in the van that day. Ms. Kinder stated that one day, when she and the victim were riding around town, they came to an old warehouse, and the victim "got upset" and told her mother what had happened there. Ms. Kinder reported to the sheriff's department what the victim said that day.

Ms. Kinder testified that during the time period of December 2, 2009, through December 11, 2009, she had surgery and the Defendant offered to take care of her children while she recovered. She stated that the Defendant had opportunities to be alone with the victim during that time.

Ms. Kinder testified that during the time period of December 1, 2009, through December 31, 2009, she moved with her children into a new house to live with Mr. Kinder, and the Defendant visited the family at this new residence.

On cross-examination, Ms. Kinder stated that she was getting along well with the Defendant during the summer of 2010. She agreed that the Defendant and the victim were "pretty close" during that time. She stated that, when the Defendant was around, the victim would not sit in his lap or talk to the Defendant as much as her other children. Ms. Kinder stated that she asked the Defendant to watch the children while she and Mr. Kinder went on their honeymoon for a couple of days in 2010.

K.C.,[1] the victim, testified that she was in the fifth grade at the time of trial and that Kimberly Kinder was her mom and Joey Kinder was her dad. K.C. testified that she had three older siblings and one younger sibling and that the Defendant was her "grandpa." She agreed that he was "not [her] grandpa anymore[,]" because "he did some things" to her. She stated that the Defendant "touched" her three times and that the first time was in the Defendant's van outside a warehouse. She stated that she and the Defendant were getting ice for a family party, and she rode with him in the front seat of his van. She stated that they bought the ice but did not go straight home after that. K.C. recalled that the Defendant parked his van behind a tree beside the warehouse and turned off the engine. He told K.C. to close her eyes, and then he reached in her pants "where the button is" on the front. She stated that the Defendant's hands went all the way inside her pants. She recalled that she had

_____

[1]It is the policy of this court to refer to minor victims by their initials only.

3

underwear on and that his hand went inside of her underwear and touched her "private area." K.C. indicated for the jury that the Defendant touched her "pubic area." K.C. stated that she did not want the Defendant to touch her. She said that his hand touched near the opening of her vagina and that "part" of his hand went inside of the opening. K.C. said it felt "weird."

K.C. testified that the Defendant then put her hand inside of his pants on the inside of his underwear. She said it felt "hairy" inside his underwear. K.C. stated that the Defendant took her hand out of his pants, and then they drove in the van back to the family party. She stated that the Defendant gave the ice he had bought to Ms. Kinder. K.C. recalled that the Defendant told her, "don't tell or you will go to the devil[,]" and made her "pinky swear" that she would not tell anyone. She said it scared her that she would "go to the devil." K.C. testified that she did not tell her mother what had happened because she was scared of the Defendant. After the touching incident, K.C. said she did not want to be around the Defendant and that she stopped hugging him and sitting on his lap.

K.C. testified that the second time the Defendant touched her was in her bedroom, during the time her mother was recovering from surgery. K.C. recalled that she got "sent to bed" for something that she did. The Defendant came into her bedroom and said she could leave if she did a "favor" for him. The Defendant told K.C. to close her eyes and reached his hand into her pants. She stated that she was wearing shorts and a tank top, or possibly pajama pants. K.C. stated that the Defendant put his hand inside her underwear and touched her "private[,]" in the pubic area she had previously indicated to the jury. She recalled that his hand touched the opening to her vagina. K.C. stated that the Defendant put her hand inside his pants and inside of his underwear and that it felt "hairy." K.C. stated that the Defendant told her not to tell and again said that she would "go to the devil" if she told anyone and that they did another "pinky swear." K.C. said she did not tell her mother about this incident because she was afraid of the Defendant.

K.C. testified that the third time the Defendant touched her was in the bedroom of the new house her family had moved into in December 2009. She stated that she was cleaning her bedroom with her sister when the Defendant came in the room and told her sister to leave. She said the Defendant shut the door when he came into the room and that her sister was too little to reach the door knob, so she stayed in the room. With her little sister watching, the Defendant told K.C. to close her eyes and he put his hands inside K.C.'s pants and underwear. K.C. stated that he touched her "private area" but said his hand did not go inside her vaginal opening. The Defendant made K.C. promise not to tell and again warned her that she would "go to the devil" if she told anyone about the incident.

After those incidents, K.C. said that, when the Defendant came to her house she would "stand by [her] dad the whole entire time" because she was afraid of the Defendant. She

4

stated that she watched a video at school about secrets and that the video "gave me a hint not to keep [the Defendant's] secret no more." K.C. said she went home from school and told Mr. Kinder about the secret that the Defendant had been putting his hand down her pants and touching her. She stated that her mother "freaked out" when K.C. told her the secret and then took her to the police department.

K.C. testified that she was driving with her mother when she saw the warehouse where the Defendant had taken her and touched her inside the van. K.C. identified a picture of the warehouse and the picture was entered into evidence.

On cross-examination, K.C. stated that when the Defendant touched her inside the van, his hand did not go inside her vagina but was "just like beside" her vagina. She clarified that "he didn't go in it[.]"

Bob Johnson testified that he was a Captain with the Marshall County Sheriff's Department and was the investigator assigned to this case. He stated that patrol officers took the initial incident report on August 13, 2010, and he coordinated an interview with the victim through the Department of Children's Services ("DCS"), which occurred on August 31, 2010. Captain Johnson stated that he never learned what happened in the interview because the DCS caseworker who conducted the interview left the Department. He stated that he spoke with the victim's mother on August 18, 2010, and spoke with the Defendant on August 30, 2010. Captain Johnson said that he went to the Defendant's residence in Murfreesboro, which was a moveable RV, and advised him that he was the subject of the investigation. Captain Johnson later learned from the Defendant's daughter that the Defendant had moved at the end of 2010.

Captain Johnson stated that another interview was set up with the victim to be conducted by a DCS worker on January 8, 2011. He stated that he watched the interview live on a television monitor and stated that the victim disclosed that the Defendant had touched her three times, consistent with her trial testimony. Captain Johnson stated that in February 2011, he found the Defendant in an RV park in Shelbyville and told the Defendant he was a suspect in the case. Two weeks later, the Defendant moved again and, when the captain was unable to locate the Defendant by March 2011, he took a warrant out for the Defendant's arrest. He stated that the Defendant was not arrested until December 14, 2012, in Manchester, Tennessee.

Captain Johnson stated that the victim's mother was able to provide a time frame for when the touching occurred based on events that the victim could remember, such as picking up ice for the family party or Ms. Kinder's surgery.

5

Janice Hickman, the Defendant's wife, testified that she was with the Defendant and the victim on the day of the first incident when they drove to a store to buy ice for the family party. She stated that she was with the Defendant and the victim the entire time. Ms. Hickman recalled being at the Kinder's home and that K.C. acted happy around the Defendant and hugged him and sat in his lap.

The Defendant testified that his wife was present on the day of the first incident when K.C. went with him to buy ice for the party. He stated that they drove straight home after going to the store, and he said he did not take K.C. to a warehouse. He testified that he never touched the victim inside of her clothes around the time of her mother's surgery, and he stated that he did not go into the bedroom where K.C. was cleaning up. He testified that he did not know what a "pinky swear" was and that he had never told K.C. not to tell anyone about anything. He stated that he had never touched her and that he would never harm a child. The Defendant explained that he moved during the investigation because the landlord did not want an accused child rapist living in the RV park. The Defendant agreed that he did not show up for his scheduled meeting with Captain Johnson, but he stated that he did not know there was an ongoing investigation.

Based upon this evidence, the jury convicted the Defendant of one count of rape of a child and three counts of aggravated sexual battery.

## C. Sentencing

At the Defendant's sentencing hearing, the trial court considered the relevant enhancement factors, giving great weight to enhancement factor (14), that the Defendant had abused a position of private trust. *See* T.C.A. § 40-35-114. Based on that enhancement factor, the trial court imposed a sentence of thirty-five years for the rape of a child conviction, and, based on the same factor, a sentence of twelve years for each of the aggravated sexual battery convictions. The trial court then imposed consecutive sentences based upon Tennessee Code Annotated section 40-35-115(b)(5), and it ordered that one twelve-year sentence for aggravated sexual battery be served consecutively to the thirty-five year sentence for rape of a child, thus imposing a total effective sentence of forty-seven years. It is from this judgment that the Defendant appeals.

## II. Analysis

On appeal, the Defendant contends that: (1) the evidence is insufficient to sustain his conviction for rape of a child; and (2) that his sentence is excessive.

## A. Sufficiency of Evidence

The Defendant contends that the evidence presented at trial is insufficient to sustain his conviction for rape of a child because the victim testified multiple times that the Defendant did not penetrate her, and she only "acquiesce[d]" and agreed that he did penetrate her after being asked multiple times. He contends that her testimony on direct was inconsistent with her testimony on cross-examination, when she "recanted" that the Defendant had penetrated her. The State responds that the victim's testimony was sufficient to support the jury's finding that the Defendant penetrated her, and that it was for the jury to weigh her testimony on direct and cross-examination and determine how to resolve the conflicting testimony. We agree with the State.

When an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering the evidence in the light most favorable to the State, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see* Tenn. R. App. P. 13(e), *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). In the absence of direct evidence, a criminal offense may be established exclusively by circumstantial evidence. *Duchac v. State*, 505 S.W.2d 237, 241 (Tenn. 1973). The jury decides the weight to be given to circumstantial evidence, and "[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury." *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (citations omitted). "The standard of review [for sufficiency of the evidence] is the same whether the conviction is based upon direct or circumstantial evidence." *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

In determining the sufficiency of the evidence, this Court should not re-weigh or reevaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999); *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956). "Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *Liakas*, 286 S.W.2d at 859. "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978); *State v. Grace*, 493 S.W.2d 474, 479 (Tenn. 1973). The Tennessee Supreme Court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1996) (citing *Carroll v. State*, 370 S.W.2d 523 (Tenn. 1963)). This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. *Goodwin*, 143 S .W.3d at 775 (citing *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000).

A conviction for rape of a child requires "the unlawful sexual penetration of a victim by the defendant or the defendant by a victim, if the victim is more than (3) years of age but less than thirteen (13) years of age." T.C.A. § 39-13-522(a) (2010). Tennessee Code Annotated section 39-13-501(6) and (7) defines sexual penetration as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's, the defendant's, or any other person's body . . . ." and sexual contact as "the intentional touching of the victim's, the defendant's, or any other person's intimate parts . . . ." There is sexual penetration, in a legal sense, if there is the "slightest penetration" of a female's sexual organ. *State v. Bowles*, 52 S.W.3d 69, 74 (Tenn. 2001). This includes the "outer folds" of the vagina. *Id.*

The victim testified that, while sitting in the Defendant's van parked beside a warehouse, the Defendant told her to close her eyes and stuck his hand down her pants on the inside of her underwear. The victim stated that his hand touched her pubic area and that part of his hand went inside the opening to her vagina. This evidence is sufficient for a jury to conclude that the Defendant sexually penetrated the victim, as legally defined, by penetrating her vagina with part of his hand. We reiterate that any questions regarding conflicting testimony given by the victim are resolved by the jury and will not be overturned by this Court. *See Bolin*, 405 S.W.2d at 771. The Defendant is not entitled to relief on this issue.

## B. Sentencing

The Defendant next contends that his sentence is excessive. He asserts that consecutive sentencing is not appropriate in light of the fact that his offenses were "non-aggravating in nature" and because the duration of the offenses was relatively short. He contends that due to his age and poor health, the minimum sentence was more appropriate and a better use of the State's resources. The State responds that the trial court properly considered the relevant factors and imposed a sentence consistent with the purposes and principles of the Sentencing Act. Therefore, the State posits, the Defendant has not proven that the trial court abused its discretion. We agree with the State.

The Tennessee Criminal Sentencing Reform Act of 1989 and its amendments describe the process for determining the appropriate length of a defendant's sentence and the manner of service of that sentence. In *State v. Bise*, the Tennessee Supreme Court reviewed changes in sentencing law and the impact on appellate review of sentencing decisions. 380 S.W.3d 682 (Tenn. 2012). The Tennessee Supreme Court announced that "sentences imposed by the trial court within the appropriate statutory range are to be reviewed under an abuse of discretion standard with a 'presumption of reasonableness.'" *Id.* A finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" *State v. Shaffer*, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)). To find an abuse of discretion, the record must be void of any substantial evidence that would support the trial court's decision. *Id.*; *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978); *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980). The reviewing court should uphold the sentence "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 709-10. So long as the trial court sentences within the appropriate range and properly applies the purposes and principles of the Sentencing Act, its decision will be granted a presumption of reasonableness. *Id.* at 707. We are to also recognize that the defendant bears "the burden of demonstrating that the sentence is improper." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

In determining the proper sentence, the trial court must consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 40-35-113 and -114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the defendant made in the defendant's own behalf about sentencing. *See* T.C.A. § 40-35-210 (2010); *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001).

In addition to these criteria, "consecutive sentencing is guided by the general sentencing principles providing that the length of a sentence be 'justly deserved in relation to the seriousness of the offense' and 'no greater than that deserved for the offense committed,'" although specific factual findings are not necessary. *State v. Imfeld*, 70 S.W.3d 698, 708 (Tenn. 2002); *see also* T.C.A. §§ 40-35-102(1), -103(2); *In re Sneed*, 302 S.W.3d 825, 828-29 (Tenn. 2010). We review a trial court's decision to impose consecutive sentences for an abuse of discretion. *State v. James Allen Pollard*, 432 S.W.3d 851, 860 (Tenn. 2013).

In determining the Defendant's sentence, the trial court made the following statements relative to enhancement factors and the imposition of consecutive sentences:

> And then we'll look for enhancing factors. We look first at number (1), previous history of criminal convictions. There is a shoplifting charge all the way back to '76. Although that's present, I don't find that significant, and I wouldn't give much weight to that by itself. On the other hand, (6) has been suggested and there certainly are injuries to the child. They're not injuries in the sense of breaks or tears. There are emotional injuries, harm that's been done by this.

> But my focus is primarily on enhancing factor number (14), and that is the abuse of a public or private trust. In this case, a private trust. This is a grandfather. And it is a grandfather who, at times, obviously, was exercising adult supervision of this child, whether it be to go to the store, other occasions that allowed him to do this. So I find factor, enhancing factor (14) to be present and to be present in a very, very significant way given the relationship and his opportunities to be with and supervise, to be the adult in charge of this particular unfortunate victim.

> So, on the rape of a child [conviction], I'm actually going to begin at the minimum [sentence], but I'm going to enhance, under those factors, up to 35 years at a hundred percent. And on each of the aggravated sexual batteries, I am going to start with that minimum [sentence], with that eight [years], but I am going to enhance up to, based [] on the same factors, which is mainly factor (14), I'm enhancing from 8 up to 12 in those [convictions].

> And then we come to the issue of consecutive or concurrent [sentences]. We know there's a presumption in favor of concurrent sentencing as a general matter, but we have two or more sexual abuses of children, which is exception number (5). So I am going to run [Count] I and II together concurrent with

10

one another and [Count] III and IV concurrent with one another, but the two [] clusters consecutive to one another, so it will be 35 plus 12. It should add up to 47 years at 100 percent.

We conclude that the trial court properly sentenced the Defendant. The trial court considered the relevant principles and sentenced the Defendant to a within range sentence. The evidence presented at trial and during the sentencing hearing supports the trial court's application of the relevant enhancement factors, specifically Tennessee Code Annotated section 40-35-144(14). The evidence was that the Defendant was the victim's grandfather and therefore trusted by his daughter to be alone with the victim and to supervise her. It was during those instances when he was with the victim that he committed these crimes.

We now turn to address whether the trial court properly ordered partial consecutive sentencing. Regarding consecutive sentencing, a trial court may order sentences to run consecutively if it finds by a preponderance of the evidence that:

(5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims.

T.C.A. § 40-35-115(b)(5) (2010). The trial court found that this section applied because this case involved multiple acts of sexual abuse arising from the Defendant's relationship with the victim as a family member and caretaker, and because this case involved the victim's fear of the Defendant, caused by the Defendant's statements to the victim following these incidents. We conclude that the trial court appropriately found that this factor supported partial consecutive sentencing.

We further conclude that the length of the Defendant's sentence is justly deserved in relation to the seriousness of these offenses, and is no greater than that deserved for the offenses committed. The trial court did not order that the sentences for all four convictions be served consecutively. It instead ordered that two of the four sentences run consecutively, for a total of forty-seven years of incarceration. We conclude the trial court did not err by ordering partial consecutive sentencing. The Defendant is not entitled to relief on this issue.

### III. Conclusion

Based on the above mentioned reasoning and authorities, we affirm the trial court's

judgments.

_____
ROBERT W. WEDEMEYER, JUDGE